**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

MICHAEL J. REDENBURG, ESQ. PC,

                Plaintiff,

                v.

MIDVALE INDEMNITY COMPANY,

                Defendant.

-------------------------------------------------------X

20 Civ. 05818 (PAE)

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

SIMPSON THACHER & BARTLETT LLP

Bryce L. Friedman
Michael J. Garvey
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000

*Attorneys for Midvale Indemnity Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .............................................................................................................. 2

      A.    The Parties ....................................................................................... 2

      B.    The Complaint .................................................................................. 3

      C.    The Policy ........................................................................................ 3

ARGUMENT .................................................................................................................... 6

I.     THE POLICY UNAMBIGUOUSLY EXCLUDES COVERAGE FOR ALL LOSS
       RESULTING FROM A VIRUS ........................................................................ 6

II.    THE ABSENCE OF DIRECT PHYSICAL LOSS OF OR DAMAGE TO PLAINTIFF'S
       PROPERTY PRECLUDES BUSINESS INCOME, EXTRA EXPENSE, AND
       EXTENDED BUSINESS INCOME COVERAGE ............................................... 9

III.   THE COMPLAINT CONCEDES THE ABSENCE OF BASIC REQUIREMENTS FOR
       CIVIL AUTHORITY COVERAGE ................................................................. 13

CONCLUSION ............................................................................................................... 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
    308 F. Supp. 2d 331 (S.D.N.Y. 2004) ............................................................. 14

*Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. v. Trumbull Ins. Co.*,
    2016 N.Y. Slip Op. 32736 (U) (N.Y. Cty. Apr. 5, 2016) ............................... 7, 8

*Bretton v. Mut. of Omaha Ins. Co.*,
    110 A.D.2d 46 (N.Y. App. Div. 1985) ............................................................. 9

*Calhoun v. Midrox Ins. Co.*,
    165 A.D.3d 1450 (N.Y. App. Div. 2018) .......................................................... 6

*Children's Apparel Network Ltd. v. Twin City Fire Ins. Co.*,
    No. 18 Civ. 10322, 2019 WL 3162199 (S.D.N.Y. June 26, 2019) ................. 6, 7

*Cincinnati Ins. Co. v. Washer & Refrigeration Supply Co., Inc.*,
    No. 07 Civ. 330, 2008 WL 4600560 (S.D. Ala. Aug. 22, 2008) ..................... 10

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
    636 F.3d 683 (5th Cir. 2011) ......................................................................... 13

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) ............................................................................ 3

*Gavrilides Mgmt. Co. vs. Michigan Ins. Co.*,
    Case No. 20-258-CB-C30 (Ingham Cty., Mich. Cir. Ct. July 1, 2020) ........ 7, 12

*Mama Jo's, Inc. v. Sparta Ins. Co.*,
    No. 17-Civ-23362, 2018 WL 3412974 (S.D. Fla. June 11, 2018) .................. 11

*N.Y. Univ. v. Factory Mut. Ins. Co.*,
    No. 15 CIV. 8505 (NRB), 2018 WL 1737745 (S.D.N.Y. Mar. 27, 2018) ......... 9

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014) ................................................. 2, 10, 11, 12

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005) ............................................................... 3

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002) ........................................................................... 11

*Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*,
    No. 06 Civ 22535, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007) ...................................... 8

*Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*,
    302 A.D.2d 1 (N.Y. App. Div. 2002) .............................................................................. 10

*Schultz Furriers, Inc. v. Travelers Cas. Ins. Co. of Am.*,
    No. A-0170-15T1, 2017 WL 1731005 (N.J. App. Div. May 3, 2017) ............................ 14

*Sixty Sutton Corp. v. Illinois Union Ins. Co.*,
    34 A.D.3d 386 (N.Y. App. Div. 2006) .............................................................................. 6

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
    No. 20-Civ-3311 (VEC) (S.D.N.Y. May 14, 2020) .................................................... 2, 12

*Syufy Enters. v. Home Ins. Co. of Ind.*,
    No. 94-Civ-756, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ...................................... 13

*Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    89 N.Y.2d 308 (N.Y. 1996) ......................................................................................... 6, 7

*U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*,
    256 F. Supp. 2d 176 (S.D.N.Y. 2003) ............................................................................. 6

*Union Mut. Fund v. Ulico Cas. Co.*,
    No. 05 Civ 6602, 2006 WL 561235 (S.D.N.Y. Mar. 1, 2006) ........................................ 6

*United Air Lines, Inc. v. Ins. Co. of State of Penn.*,
    439 F.3d 128 (2d Cir. 2006) .......................................................................................... 13

## Other Authorities

*Handbook on Insurance Coverage Disputes*, Ostrager & Newman § 21.02 (19th
    Ed. 2018) ...................................................................................................................... 10

## Rules

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1, 6

Defendant Midvale Indemnity Company ("Midvale") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Michael J. Redenburg, Esq. PC's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff seeks to recover under its property insurance policy the business income it allegedly lost as a result of social-distancing measures taken in response to the COVID-19 virus. The suit must be dismissed because the insurance policy Plaintiff purchased plainly states that it does not cover any loss caused by or resulting from a virus and does not respond in any event for a loss that was not caused by direct physical loss of or damage to property.

Plaintiff operates a law firm in New York City.  Plaintiff claims that, as a result of social-distancing directives issued by the State of New York in response to the COVID-19 virus, his business declined "in that clients have not been able to come to his office, which is where Plaintiff traditionally met his clients."  Compl. ¶ 41.  The Complaint seeks a declaratory judgment that Plaintiff's resulting loss of income is covered under the "Business Income," "Extra Expense," "Extended Business Income," and "Civil Authority" sections of its property insurance policy. Because the policy unambiguously does not cover the loss alleged, the Complaint should be dismissed.

First, the Policy only insures against a "Covered Cause of Loss." The cause of Plaintiff's alleged loss is the COVID-19 virus, which is not a "Covered Cause of Loss," and is excluded "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."  The only plain, ordinary and reasonable reading of these provisions is that the Policy does not cover losses resulting from the COVID-19 virus, including government orders issued in response to the virus.

Second, the Complaint does not plead that Plaintiff's loss of income or additional expenses were caused by "direct physical loss of or damage to" Plaintiff's premises. This is a threshold requirement for Business Income, Extra Expense, and Extended Business Income coverage under the Policy. The Complaint attributes Plaintiff's loss to social-distancing rules issued in response to the COVID-19 virus, which are not "direct physical loss of or damage to" Plaintiff's property. The requirement in the Policy that losses be direct and physical reflects the common-sense proposition that property insurance does not respond any time a policyholder suffers a loss due to reasons "exogenous to the premises," such as a government regulation. *See Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (Engelmayer, J.) (upholding denial of coverage for law firm's lost income arising from its inability to access its office following Hurricane Sandy); Ex. B (Transcript of Decision), *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-Civ-3311 (VEC) (S.D.N.Y. May 14, 2020), at 5 ("[COVID-19] damages lungs. It doesn't damage printing presses.").

Third, Plaintiff's alleged loss does not satisfy the threshold requirements for Civil Authority coverage under the Policy. New York social-distancing orders are not "actions of civil authority" that were taken "as a result of" any "damaged property" within one mile of Plaintiff's premises. And those orders did not "prohibit[] access" to Plaintiff's premises—to the contrary, Plaintiff merely alleges that it "was unable to have clients to [its] office" (Compl. ¶ 36), not that access to the premises was prohibited.

For these reasons, the Complaint should be dismissed with prejudice.

## **BACKGROUND**

### A.    **The Parties**

Midvale is an insurance company licensed to write commercial property insurance in New York. According to the Complaint, Plaintiff owns and operates a law firm located in New York,

New York.  Compl. ¶ 8.  Plaintiff purchased commercial property insurance from Midvale.  The governing insurance contract, Policy Number BPP1009534 (the "Policy"), *id.* ¶ 10, is attached as Exhibit A to the accompanying Declaration of Bryce L. Friedman.[1]

**B.     The Complaint**

Plaintiff claims to have suffered business loss as a result of executive orders issued by the Governor of New York and the State of New York.  *Id.* ¶¶ 41–42.  Specifically, Plaintiff claims that, as a result of stay-at-home orders, "clients have not been able to come to his office," and "his law firm's practice is established on face-to-face personal interactions."  *Id.* ¶¶ 2, 36, 41.  Based on the foregoing, the Complaint seeks declarations that Plaintiff's loss of income and additional expense are covered under the Business Income, Extra Expense, Extended Business Income, and Civil Authority sections of the Policy.  *Id.* ¶¶ 49–53.

**C.     The Policy**

**1.     The Covered Cause of Loss Requirement/Virus Exclusion**

The relevant coverages only respond to losses that result from a "Covered Cause of Loss." A Covered Cause of Loss is defined as "[r]isks of direct physical loss unless the loss is . . . [e]xcluded in Paragraph B.  Exclusions in Section I[.]"  Ex. A at MIC16.  Paragraph B(1)(j) excludes from a Covered Cause of Loss any "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  *Id.* at MIC29, MIC31.  Such loss or damage "is excluded regardless

---

[1] Citations to "Ex. __" refer to exhibits to the Declaration of Bryce L. Friedman, dated August 3, 2020.  In considering a Rule 12(b)(6) motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  Here, the Policy is incorporated by reference because the Complaint "make[s] a clear, definite and substantial reference" to its terms.  *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 285 (S.D.N.Y. 2005).

of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at MIC29.

2.    Business Income Coverage

The Policy covers "the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'.  **The suspension must be caused by direct physical loss of or damage to property at the described premises**." *Id.* at MIC19 (emphasis added).  The "period of restoration" begins "72 hours after the time of direct physical loss or damage," and ends on the earlier of "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or . . . [t]he date when business is resumed at a new permanent location." *Id.* at MIC44.

3.    Extra Expense Coverage

The Policy covers "necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred **if there had been no direct physical loss or damage to property at the described premises**." *Id.* at MIC21 (emphasis added).  For Extra Expense coverage, the "period of restoration" begins "[i]mmediately after the time of direct physical loss or damage" and is otherwise defined as for Business Income.  *Id.* at MIC44.

4.    Extended Business Income Coverage

Extended Business Income coverage covers "the actual loss of Business Income" incurred "during the period that . . . [b]egins on the date property except finished stock is actually repaired, rebuilt or replaced and 'operations' are resumed." *Id.* at MIC20.  Coverage ends on the earlier of:

> i.    The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

       ii.     30 consecutive days after the date determined in Paragraph (a)(i) above, unless a greater number of consecutive days is shown in the Declarations.

*Id.* Extended Business Income does not apply to:

> loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located. . . . **Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss**.

*Id.*

     5.     <u>Civil Authority Coverage</u>

The Policy also provides that "we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that **prohibits access to the described premises**," provided that both of the following apply:

> (1)     Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2)     The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at MIC21–22 (emphasis added). Civil Authority coverage for lost Business Income begins 72 hours "after the time of the first action of civil authority that prohibits access to the described premises[.]" *Id.* at MIC22. For Extra Expense, it begins "immediately after the first action of civil authority that prohibits access to the described premises[.]" *Id.* In both cases, the policyholder is only entitled to coverage for 4 consecutive weeks after the date of such first action prohibiting access. *Id.*

## ARGUMENT

A policyholder seeking a declaration of insurance coverage has the burden to plead (and ultimately prove) the requisite elements for coverage under the governing insurance policy. *Union Mut. Fund v. Ulico Cas. Co.*, No. 05 Civ. 6602, 2006 WL 561235, at *2 (S.D.N.Y. Mar. 1, 2006). Failure to do so results in dismissal of the Complaint. Fed. R. Civ. P. 12(b)(6); *Union Mut. Fund*, 2006 WL 561235, at *2 (granting insurer's motion to dismiss because claims asserted by insured in underlying litigation fell outside insurance policy's scope of coverage); *Calhoun v. Midrox Ins. Co.*, 165 A.D.3d 1450, 1451–52 (N.Y. App. Div. 2018) (granting insurer's motion to dismiss where the complaint alleged damage that was not caused by a covered peril); *Sixty Sutton Corp. v. Illinois Union Ins. Co.*, 34 A.D.3d 386, 386 (N.Y. App. Div. 2006) (granting motion to dismiss where plaintiff failed to establish coverage under the relevant insurance policy). "The construction of an insurance contract is ordinarily a matter of law to be determined by the court." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003) (citing *Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 89 N.Y.2d 308 (1996)). Moreover, if the Policy unambiguously excludes coverage for the policyholder's loss, as alleged in the Complaint, the Complaint should be dismissed. *Children's Apparel Network Ltd. v. Twin City Fire Ins. Co.*, No. 18 Civ. 10322, 2019 WL 3162199, at *3 (S.D.N.Y. June 26, 2019) (dismissing insurance coverage action based on unambiguous exclusion).

## I.   THE POLICY UNAMBIGUOUSLY EXCLUDES COVERAGE FOR ALL LOSS RESULTING FROM A VIRUS

Plaintiff cannot claim coverage under the Business Income, Extra Expense, Extended Business Income, or Civil Authority sections of the Policy unless he alleges a "Covered Cause of Loss." "Covered Cause of Loss" is specifically defined to exclude "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of

inducing physical distress, illness or disease." Ex. A at MIC29, MIC31. The Policy states that virus-related losses are not covered "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at MIC29. Accordingly, Plaintiff's claims under the Business Income, Extra Expense, Extended Business Income, and Civil Authority sections of the Policy all fail and the Complaint should be dismissed. *See* Ex. C (Transcript of Decision), *Gavrilides Mgmt. Co. vs. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Ingham Cty., Mich. Cir. Ct. July 1, 2020), at 20, 22 (rejecting argument that term "virus" in insurance policy was vague, and holding that "even if there were allegations in the complaint alleging actual physical loss or damage . . . there is a virus exclusion that would also apply").

The Complaint alleges that Plaintiff's losses were caused by social-distancing rules issued in response to COVID-19, which has left Plaintiff "unable to meet clients in his . . . office." Compl. ¶¶ 2, 25. By acknowledging that COVID-19, a virus, led to Plaintiff's alleged loss, the Complaint concedes the absence of a Covered Cause of Loss. This is the only reasonable application of the plain and ordinary meaning of the terms of the insurance contract to the facts alleged. *See Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. v. Trumbull Ins. Co.*, 2016 N.Y. Slip Op. 32736, at *29–31 (U) (N.Y. Cty. Apr. 5, 2016) (finding no civil authority coverage where evacuation order was issued due to potential for flooding, an excluded cause of loss); *Children's Apparel Network*, 2019 WL 3162199, at *3 (finding that while an insurance policy generally covers computer fraud, the exclusion "expressly precludes any such coverage here"). Thus, "[c]onstruing the terms of these exclusions as required, by giving the words their plain meaning, it is evident that coverage is unavailable[.]" *Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 308, 316 (N.Y. 1996).

The Complaint advances two arguments to avoid application of the plainly worded virus exclusion.  Neither has merit.  First, Plaintiff attempts to draw a distinction between the virus and the "pandemic," contending that its loss was caused by the pandemic and there is no specific exclusion for "pandemics" under the Policy.  Compl. ¶ 17.  However, the  "COVID-19 pandemic" is simply a large-scale outbreak of a virus.[2]  The virus exclusion in the Policy applies "whether or not [the virus] results in **widespread damage** or affects a **substantial area**."  Ex. A at MIC29 (emphasis added).  Plaintiff's argument is akin to arguing that a coverage exclusion for damage caused by fire does not apply to damage caused by a very large fire.

Second, the Complaint contends that the virus exclusion is not applicable because its loss was caused not by the virus but by social distancing orders that Governor Cuomo and the New York Department of Health issued in response to COVID-19.  Compl. ¶¶ 25, 49.  A loss resulting from government action taken in response to the virus is unequivocally a loss "caused directly or indirectly" by the virus. Ex. A at MIC29, MIC31 (excluding coverage for "damage caused directly or indirectly" by "[a]ny virus"); *Borah*, 2016 N.Y. Slip Op. 32736, at *29–31 (finding no civil authority coverage where evacuation order was issued due to potential for flooding, and the exclusion applied "regardless of any other cause or event that contributes concurrently or in any sequence to the loss"); *see also Prime All. Grp., Ltd. v. Hartford Fire Ins. Co.*, No. 06 Civ. 22535, 2007 WL 9703576, at *4 (S.D. Fla. Oct. 19, 2007) ("[A] plain language reading of this section provides coverage when a peril—such as a windstorm—causes damage to property and, as a result, access to property is precluded by a civil authority order.  **The order of civil authority cannot in**

---

[2]  See  "Pandemic," Merriam-Webster,  https://www.merriam-webster.com/dictionary/pandemic (last accessed July 31, 2020) (defining "pandemic" as "an outbreak of a disease that occurs over a wide geographic area and affects an exceptionally high proportion of the population").

**any reasonable manner be construed as a 'peril.'**") (emphasis added).[3]  Even accepting the

notion that social distancing rules implemented in response to the virus could be treated as an

independent cause of Plaintiff's loss, the Complaint concedes that the virus is what gave rise to

those rules.  Under the Policy, if the virus is in the causal chain that resulted in Plaintiff's loss, the

virus exclusion applies "regardless of any other cause or event that contributes concurrently or in

any sequence to the loss."  Ex. A at MIC29.

## II.   THE ABSENCE OF DIRECT PHYSICAL LOSS OF OR DAMAGE TO PLAINTIFF'S PROPERTY PRECLUDES BUSINESS INCOME, EXTRA EXPENSE, AND EXTENDED BUSINESS INCOME COVERAGE

To qualify for Business Income coverage, Plaintiff must allege a loss of income "due to"

the necessary suspension of its operations "caused by direct physical loss of or damage to"

Plaintiff's premises.  *See* Ex. A at MIC19.  To qualify for Extra Expense coverage, Plaintiff must

allege an expense Plaintiff incurred during the period in which Plaintiff was restoring its property

that it would not have incurred "if there had been no direct physical loss or damage" to Plaintiff's

premises.  *Id.* at MIC21.  Similarly, Extended Business Income coverage applies only where the

policyholder's "[l]oss of Business Income [is] caused by direct physical loss or damage" at

Plaintiff's premises.  *Id.* at MIC20.

---

[3] Under the Policy, virus is not a covered cause of loss.  Construing the Policy to cover loss caused by an alleged action of civil authority taken in response to the virus would render the virus exclusion, as applied to Civil Authority coverage, meaningless, which offends basic contract interpretation principles.  *See N.Y. Univ. v. Factory Mut. Ins. Co.*, No. 15 CIV. 8505 (NRB), 2018 WL 1737745, at *10 (S.D.N.Y. Mar. 27, 2018) ("An insurer is entitled to have its contract of insurance enforced in accordance with its provisions and without a construction contrary to its express terms.") (quoting *Bretton v. Mut. of Omaha Ins. Co.*, 110 A.D.2d 46, 49, *aff'd*, 66 N.Y.2d 1020 (N.Y. App. Div. 1985)).

Here, the Complaint does not allege any direct physical loss of or damage to Plaintiff's premises, let alone that any such loss or damage to Plaintiff's premises caused Plaintiff to suspend operations or incur any additional expense.  Rather, the Complaint contends that Plaintiff's loss of income and additional expense was "a result of the [social distancing] [o]rders."  *See, e.g.*, Compl. ¶¶ 41, 46.  Social-distancing rules that limit a policyholder's operations or negatively affect its business are not "direct physical loss of or damage to property."  *See Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 3, 7 (N.Y. App. Div. 2002) (where scaffolding collapse, which occurred outside the insured theater, rendered the theater inaccessible, business interruption coverage was not available because there was no direct physical loss or damage to the theater itself); *see generally Handbook on Insurance Coverage Disputes*, Ostrager & Newman § 21.02 (19th Ed. 2018) ("The direct physical loss requirement operates to exclude coverage for intangible and economic losses suffered by the insured.") (citing cases).[4]

This Court's decision in *Newman Myers* is instructive.  In that case, the policyholder, a law firm, sought coverage for lost income arising from its inability to access its office following Hurricane Sandy.  17 F. Supp. 3d at 324–25.  The policyholder was unable to access its office as a result of a preemptive shutdown of electrical power services by its utility provider to protect against damages due to flooding.  *Id.* at 325.  The policyholder claimed that the power shutdown triggered coverage under its property insurance policy for lost business income and extra expenses.

---

[4] Even if social-distancing rules could constitute a Covered Cause of Loss, Extended Business Income coverage does **not** provide coverage for "loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located."  Ex. A at MIC20; *Cincinnati Ins. Co. v. Washer & Refrigeration Supply Co., Inc.*, No. 07 Civ. 330, 2008 WL 4600560, at *11 (S.D. Ala. Aug. 22, 2008) (Extended Business Income coverage not available where the "overwhelming evidence" indicated that insured's slowdown in business beyond 60 days after Hurricane Katrina was caused by the impact of the storm in the surrounding area of the insured's business).

*Id.* at 326.  This Court dismissed the policyholder's claim, holding that the "direct physical loss or damage" requirement in the policy "unambiguously[] requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Id.* at 331.  As the Court specifically noted, "[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure."  *Id.*

The Complaint makes a generic statement that the "COVID-19 pandemic causes property damage because of its propensity to attach to surfaces for long periods of time."  Compl. ¶ 21. Mere allegations that virus cells can attach to surfaces do not demonstrate any "direct physical loss of or damage to property."  *See Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (policyholder could not meet its burden of establishing that presence of asbestos in a building "physically damaged" the structure sufficient to trigger property insurance coverage); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-Civ-23362, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018)  (denying business income coverage where road construction created dust and debris that an adjacent restaurant had to constantly clean because "cleaning is not considered direct physical loss").  Moreover, the Complaint concedes that Plaintiff's purported losses were "not because coronavirus was found in or on Plaintiff's insured property" Compl. ¶¶ 25; *accord* ¶ 40 (alleging that "businesses such as Plaintiff's" are at "a heightened *risk* of the property becoming contaminated").

To date, two courts have considered COVID-19 coverage claims predicated on alleged loss of income arising from social-distancing orders.  Both have recognized that the allegations are insufficient to trigger Business Income coverage.  *See* Ex. B (Transcript of Decision), *Social Life*

*Magazine*, at 5 ("[COVID-19] damages lungs.  It doesn't damage printing presses."); Ex. C (Transcript of Decision), *Gavrilides*, at 18–20 (the requirement of "direct physical loss of or damage to" property requires physical alteration to the integrity of the property or tangible physical damage and here there was none).

The Complaint contends that Plaintiff has suffered a direct physical loss because "he has been unable to use his property for its intended purpose."  Compl. ¶ 19.  Plaintiff's reading impermissibly writes out of the Policy the words "direct," "physical" and "loss of or damage to property," and would cast property insurers as underwriters of any income losses attributable to anything that can be said to negatively affect a business owner's intended use of its property.  As the court in *Gavrilides* recently noted in rejecting a claim virtually identical to Plaintiff's,

> common rules of grammar would apply to make that phrase a short-cut way of saying 'direct physical loss of property or direct physical damage to property.' So, again, the plaintiff just can't avoid the requirement that there has to be something that physically alters the integrity of the property. There has to be some tangible, *i.e.*, physical damage to the property.

*See* Ex. C (Transcript of Decision), *Gavrilides*, at 20.[5]

Because the Complaint concedes that Plaintiff's alleged loss was not caused by direct physical loss of or damage to Plaintiff's property, Plaintiff's claims under the Business Income, Extra Expense, and Extended Business Income sections of the Policy fail as a matter of law.

---

[5] Plaintiff's argument that Defendant should have "used explicit language stating . . . a definition of 'physical loss of [or] damage'" that excluded "loss of use of property that has not been physically altered" to exempt coverage (Compl. ¶ 16) is a red herring.  The Policy includes an exclusion that states "[w]e will not pay for loss or damage caused directly or indirectly by . . . [t]he enforcement of **any ordinance or law regulating the construction, use or repair of any property**." Ex. A at MIC29 (emphasis added); *see also Newman Myers*, 17 F. Supp. 3d at 331 (rejecting plaintiff's argument that "'direct physical loss or damage' should be read to include to extend to mere loss of use of a premises, where there has been no physical damage to such premises").

III.    **THE COMPLAINT CONCEDES THE ABSENCE OF BASIC REQUIREMENTS FOR CIVIL AUTHORITY COVERAGE**

To assert a viable claim under the Civil Authority section of the Policy, Plaintiff would need to allege that (1) a "Covered Cause of Loss" caused damage to another's "property" within one mile of Plaintiff's office; (2) "as a result of the damage," a civil authority took action "in response to dangerous physical conditions" resulting from the property damage or a continuation of the Covered Cause of Loss that caused the damage; and (3) the civil authority's action "prohibited access" to Plaintiff's office. *See* Ex. A at MIC21–22.  Civil authority coverage might apply, for example, where a policyholder suffers a loss of income after property adjacent to the policyholder's business is destroyed by fire and the fire department orders the insured's business closed pending a clean-up of the fire.  *See generally Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 686–87 (5th Cir. 2011) ("[C]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property.") (citation omitted).

The Complaint not only fails to allege a Covered Cause of Loss, it also fails to allege the social distancing orders issued by Governor Cuomo and the New York Department of Health were actions of civil authority taken "as a result of" direct physical loss of or damage to property anywhere.  *See United Air Lines, Inc. v. Ins. Co. of State of Penn.*, 439 F.3d 128, 134–35 (2d Cir. 2006) (finding no civil authority coverage for airline losses arising from Washington D.C. airport shutdown on September 11 because the shutdown was not "a result of" property damage at the Pentagon, but rather was prompted by human safety risks posed by future terrorist attacks); *see also Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-Civ-756, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995)  (rejecting claim for civil authority coverage where a government-ordered curfew

13

during riots caused a business loss because "[t]he requisite causal link between damage to adjacent property and denial of access to" plaintiff's premises was "absent"). As the Complaint acknowledges, the social distancing orders were "public safety" initiatives intended to slow the transmission of the virus by imposing limitations on large gatherings, directing non-essential workers to "stay at home," and requiring face coverings. Compl. ¶¶ 32–35. The risk to human safety posed by future, potential transmission in spaces throughout New York was the underlying cause for the governmental orders that mandated social distancing on a statewide basis.

Moreover, the Complaint does not state that Plaintiff has been "prohibit[ed]" from accessing its law firm. Instead, the Complaint merely states that "Plaintiff's law firm was unable to have **clients** to his office." Compl. ¶ 36 (emphasis added). This is also fatal to Plaintiff's Civil Authority claim, and Plaintiff's Complaint must be dismissed. *See Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335 (S.D.N.Y. 2004) (denying insurance coverage for time period when "no civil authority [order] prohibited access" to policyholder's premises "despite any confusion that . . . employees may have had about access"); *Schultz Furriers, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. A-0170-15T1, 2017 WL 1731005, at *4 (N.J. App. Div. May 3, 2017) (rejecting civil authority claim predicated on government actions during and following Superstorm Sandy because policyholder's owner could still enter its premises, thus foreclosing any claim that "access was totally and completely prevented, *i.e.*, made impossible").

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety and with prejudice.

Dated: August 3, 2020                    Respectfully submitted,

                                         SIMPSON THACHER & BARTLETT LLP

                                         By: */s/ Bryce L. Friedman*
                                         _____
                                                 Bryce L. Friedman
                                                 Michael J. Garvey

                                         425 Lexington Avenue
                                         New York, NY 10017
                                         Telephone: (212) 455-2000
                                         Facsimile: (212) 455-2502
                                         bfriedman@stblaw.com
                                         mgarvey@stblaw.com

                                         *Attorneys for Midvale Indemnity Company*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of August 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: */s/ Bryce L. Friedman*
Bryce L. Friedman

16