UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

MICHAEL J. REDENBURG, ESQ. PC,

                        Plaintiff,

                   -v-

MIDVALE INDEMNITY COMPANY,

                       Defendant.

20 Civ. 5818 (PAE)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Michael J. Redenburg, Esq. PC is a Manhattan law firm owned and operated by Michael J. Redenburg, Esq., its sole proprietor.[1]  On May 25, 2020, Redenburg brought suit in New York State Supreme Court against Midvale Indemnity Company ("Midvale"), seeking a declaration that the firm's commercial property insurance policy with Midvale covered its losses caused by stay-at-home and social-distancing directives issued by New York State in response to the COVID-19 pandemic.  Midvale removed the action to this court.  Two motions are pending.  Redenburg moves to remand the case to state court, and Midvale moves to dismiss Redenburg's Complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Court denies the motion to remand, and—consistent with the decisions of courts across the nation dismissing claims for coverage under commercial business-interruption or property-damage policies for losses attributable to COVID-19—grants Midvale's motion to dismiss.

---

[1] The Court refers herein to the law firm and its sole proprietor as "Redenburg."

I.   **Background**[2]

    A.   **Factual Background**

The offices of the Redenburg law firm ("the Property") are located at 32 Broadway in lower Manhattan. *See* Compl. ¶¶ 8–10. Redenburg purchased a commercial property-insurance policy from Midvale (Policy BPP1009534) which covered the Property and which, as renewed, was in effect at all relevant times. Dkt. 18 ("MTD Opp'n") at 1; *see* Policy. The Policy provides, *inter alia*, that Midvale "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Policy at MIC15.

---

[2] This factual account draws primarily from the Complaint, Dkt. 1, Ex. A ("Compl."), attached exhibits, and documents that it incorporates by reference. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). The Complaint both refers to and attaches the insurance policy at issue, *see* Dkt. 1, Ex. A, which is separately attached to the Declaration of Bryce L. Friedman, Esq., submitted by Midvale, Dkt. 13 ("Friedman Decl."), Ex. A ("Policy"). The Court accordingly considers the text of the Policy in resolving Midvale's motion to dismiss under Rule 12(b)(6). In resolving that motion, the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

In considering Redenburg's remand motion, the Court also considers the materials attached to Midvale's notice of removal, Dkt. 1 ("Removal Notice"), including Redenburg's letter to Midvale explaining its basis for seeking coverage, *id.*, Ex. B ("Redenburg Letter"), and declarations submitted by Midvale in opposition to the remand motion, *see* Dkt. 26 ("Yau Decl."); *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010) (To determine subject matter jurisdiction "courts are permitted to look to materials outside the pleadings. Such materials can include documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." (citations omitted)); *Arseneault v. Congoleum*, No. 01 Civ. 10657 (LMM), 2002 WL 472256, at *6 (S.D.N.Y. Mar. 26, 2002) ("The Second Circuit . . . has said that, on jurisdictional issues, federal courts may look outside [the] pleadings to other evidence in the record" and therefore the court will consider "material outside of the pleadings" submitted on a motion to remand. (citation and quotation omitted));.

Redenburg claims that it has suffered significant losses as a result of governmental orders, imposed following the onset of the COVID-19 pandemic, which closed non-essential offices. Compl. ¶ 2. These included New York's State's order, imposed on March 20, 2020, which required non-essential workers to stay at home, and its order, imposed on April 17, 2020, which required persons over age two to wear a face covering when in public. *Id.* ¶¶ 34–35. Redenburg alleges that, although he continued to go to his office, his clients could not, which harmed the firm's business, which relies on "face-to-face interactions" with clients. *Id.* ¶ 36; *see also* Redenburg Letter at 2. Redenburg also notes that, as a result of state mandates limiting new filings in state court to emergency matters, between March 20 and May 25, 2020, he was unable to file new civil actions in state court. Compl. ¶ 43.

On a date the record does not specify, Redenburg submitted a claim under its property-insurance policy with Midvale, seeking to recover the business income the firm had lost as a result of the state's stay-at-home and social-distancing orders. On May 13, 2020, Midvale's claim administrator sought further information about the claim, and on May 19, 2020, Redenburg submitted a letter in response. Redenburg Letter at 1. He represented that, as a result of the state's orders, he had lost the use of his office as a place to meet clients. *See id*. at 2 ("Due to Civil Authority Orders, CDC guidance and common sense given the global pandemic, Michael J. Redenburg, Esq. PC is currently closed to clients coming to his office. Further, due to the COVID-19 pandemic, the Courts are closed so the business of Michael J. Redenburg, Esq. PC is effectively closed."). He estimated that the firm had lost, beginning March 20, 2020, $6,914.46 in income per week, a figure derived by dividing the firms' gross receipts from 2019 by 52. *Id*. at 4. The letter stated that Redenburg was seeking coverage for "[b]usiness income loss,"

"[b]usiness interruption due to the closure of [office] by order of Civil Authority," and for "business loss for property damage." *Id*. at 1.³

After receiving this letter, Midvale's claims administrator investigated. It denied the claim, finding that there had been no direct physical damage to the Property, and noting that loss or damage caused directly or indirectly by any virus is expressly excluded from coverage under the Policy. Dkt. 25 ("Remand Opp'n") at 2.

### B. Procedural History

On May 25, 2020, Redenburg filed suit against Midvale in New York State Supreme Court in Manhattan. His Complaint sought a declaratory judgment that the Policy covered the firm's loss of business income attributable to the state's COVID-19 directives. Compl. ¶¶ 2, 36, 41. The declaration as sought applied to "any current, future and continued [] closure of [the firm's] business" attributable to these directives. *See id*. at 12 (prayer for relief). On June 26, 2020, the Complaint was served on Midvale. *See* Removal Notice ¶ 4.

On July 27, 2020, Midvale removed the case to this Court, based on diversity jurisdiction. Midvale explained that the Redenburg firm is a citizen of New York, Midvale is a citizen of Wisconsin, and the amount in controversy, Redenburg's estimated weekly income loss multiplied by the weeks covered by the directives, exceeded $75,000. *Id*. ¶ 14.

On July 29, 2020, Redenburg moved to remand to state court, Dkt. 9, and filed a memorandum of law in support, *id.*, Ex. 1 ("Remand Mem."). On August 3, 2020, Midvale filed a motion to dismiss, Dkt. 11, and a memorandum of law in support, Dkt. 12 ("MTD Mem.").

On August 4, 2020, the Court set a briefing schedule, Dkt. 17, in accordance with which,

---

³ Redenburg later expanded the bases for his claims to also include the Policy's "civil authority" section. *See* Compl. ¶ 17.

on August 25, 2020, Redenburg filed an opposition to the motion to dismiss, Dkt. 18, and, on September 1, 2020, Midvale filed a reply, Dkt. 20 ("MTD Reply").[4] On September 8, 2020, Midvale filed its opposition to the motion to remand, Remand Opp'n, and the declaration of Carolyn D. Yau, Assistant Vice Principal of Commercial Product Management of Homesite Insurance Company, *see* Yau Decl. On September 12, 2020, Redenburg filed a reply in support of remand. Dkt. 27 ("Remand Reply").

## II.  Redenburg's Motion to Remand

Because the Court must confirm its subject-matter jurisdiction at the outset, the Court considers first Redenburg's motion to remand. *See All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (generally "the jurisdictional issue must be resolved before the merits issue"). Midvale's basis for removal was diversity jurisdiction, 28 U.S.C. § 1441(a), which requires complete diversity between the parties and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332. Redenburg disputes both that there is complete diversity and an amount in controversy above $75,000. Midvale, as the removing party, bears the burden of establishing federal jurisdiction. *See Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–32 (2d Cir. 2001).

### A.  Diversity of Citizenship

"[F]or diversity jurisdiction to be available, all of the adverse parties in a suit must be completely diverse with regard to citizenship." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998). For diversity purposes, a corporation "is considered a citizen of the state in which it is incorporated and the state of its principal place of business."

---

[4] On September 3, 2020, Midvale submitted a letter with supplemental authority in support of dismissal, Dkt. 22; and on September 4, 2020, Redenburg filed a response. Dkt. 23. Between September and December 2020, the parties filed letters identifying further new case authority. *See* Dkts. 28–37.

*Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012); 28 U.S.C. § 1332(c).  Redenburg is undisputedly a citizen of New York, as it is a New York domestic professional corporation with its principal place of business in New York City. Compl. ¶¶ 7–8; *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 89 (2d Cir. 1983) ("[P]rofessional corporations . . . [f]or purposes of removal under section 1441(a) . . . [are] deemed a citizen of any State by which [they have] been incorporated and of the State where [they have their] principal place[s] of business.").  As to Midvale, it has offered persuasive declarations that it is a Wisconsin corporation with its principal place of business in Wisconsin.  *See* Removal Notice ¶ 13; Yau Decl. ¶¶ 2–3; *Brown v. Richer-Guinard*, No. 19 Civ. 5914 (AJN), 2020 WL 2833867, at *2 (S.D.N.Y. June 1, 2020) ("[B]ased on the declaration . . . Defendants have proven [a party is] . . . a citizen of Maryland for diversity purposes.").

       Nevertheless, Redenburg argues that, for three reasons, the parties are not diverse.

       First, Redenburg argues that Midvale has failed to identify its members, parent companies, and subsidiaries.  That argument is misguided.  As a corporation, Midvale does not have "members"; a corporation has shareholders but their citizenship is irrelevant to diversity jurisdiction.  *See E.R. Squibb & Sons, Inc.*, 160 F.3d at 931 ("[The corporation's] citizenship alone matters and the status of [its] individual shareholders can therefore be ignored.").  And *Boghozian v. Jaguar Land Rover N. Am., LLC*, 2019 WL 1925491 (C.D. Cal. Apr. 29, 2019), on which Redenburg relies, is inapposite, because it involved an LLC, not a corporation.  *Id.* at *1.  The citizenships of Midvale's parent and subsidiary corporations are likewise irrelevant. *See Matsumura v. Benihana Nat'l Corp.*, 2007 WL 1489758, at *6 (S.D.N.Y. May 21, 2007) ("[I]n all but exceptional circumstances, the principal place of business of a corporation for purposes of 28 U.S.C. § 1332(c)(1) is determined without reference to the business of parent

corporations or subsidiary corporations." (internal quotation marks and citation omitted)); *Powers v. Fox Television Stations, Inc.*, 907 F. Supp. 719, 722 (S.D.N.Y. 1995) ("[The] general rule [is] that a subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business." (quotations omitted)). Here, Redenburg has failed to adduce any evidence, let alone enough to "sustain the [plaintiff's] burden of proving that the [defendant's] subsidiaries are alter egos of [the defendant] in order to defeat diversity." *Matsumura*, 2007 WL 1489758, at *6.

Second, Redenburg argues that the parties are not diverse because Homesite Insurance Company of New York is an affiliate of Midvale. Remand Mem. at 5. That matters, Redenburg urges, because the Policy states that it had been underwritten by "member companies and affiliates of the Homesite Insurance Group." *Id.* And the Homesite Insurance Group, Redenburg notes, includes, among others, the Homesite Insurance Company of New York. *Id.* The Complaint, however, does not allege that the Homesite Insurance Company of New York has any connection to this case, in which Midvale, the contracting party and underwriter, is the only named defendant. *See* Yau Decl. ¶ 4. Redenburg does not explain why the citizenship of non-party Homesite Insurance Company of New York bears on the diversity analysis or cite case authority that would make such a non-party underwriter's citizenship relevant. *See Farris v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 14094 (DT), 2010 WL 420015, at *1 (E.D. Mich. Jan. 28, 2010) ("In determining whether diversity of citizenship exists, only the named defendants are considered."); *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 180 (S.D.N.Y. 2003) ("An action based on state law is removable to federal court when the district court would have original diversity jurisdiction . . ., 28 U.S.C. § 1332; when none of the parties properly joined and served at the time of removal are residents of the

7

forum state, 28 U.S.C. § 1441(b); and when the plaintiff has not attempted to defeat removal by fraudulently joining as defendants parties with no real connection with the controversy." (quotations omitted)).

Finally, Redenburg argues that where a corporation is decentralized, the "nerve center" of the corporation can determine its principal place of business. *See* Remand Reply at 2 (citing *Frisone v. Pepsico*, 369 F. Supp. 2d 464 (S.D.N.Y. 2005)). But Redenburg does not cite any competent basis for depicting Midvale as decentralized. And the declaration of Midvale official Carolyn D. Yau, despite Redenburg's claim to the contrary, does not support that claim at all. Instead, the assembled evidence demonstrates that Midvale's principal place of business (and place of incorporation) is Wisconsin.

The Court therefore finds that complete diversity of citizenship has been established.

**B.      Amount in Controversy**

Redenburg's Complaint seeks a declaratory judgment that the "Policy provides coverage to Plaintiff for any current and future business personal property loss, loss of business income, and extended business income losses." Compl. ¶ 53. Redenburg has estimated that its weekly covered loss since March 20, 2020 exceeded $6,900. *See* Redenburg Letter at 4. Based on that estimate, the coverage Redenburg appears to seek here was—as of July 27, 2020, the date of removal—more than $124,000. Remand Opp'n at 6; *see F5 Cap. v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) ("jurisdictional facts are assessed at the time of removal"). Redenburg does not dispute that it seeks at least this sum under the Policy. Instead, it makes three arguments, each unavailing.

First, Redenburg notes that the relief he seeks in this action is a declaratory judgment, not money damages. However, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the

8

litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation."). "This value is measured from the plaintiff's perspective and is 'the monetary value of the benefit that would flow to the plaintiff if . . . declaratory relief were granted.'" *Citak & Citak v. St. Paul Travelers Cos., Inc.*, No. 07 Civ. 5459 (WHP), 2007 WL 4592328, at *2 (S.D.N.Y. Dec. 27, 2007) (quoting *Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007)).

Here, Redenburg does not contest that the insurance coverage that would result from entry of the declaratory judgment he seeks would significantly exceed $75,000, reflecting the covered losses he claims to have experienced during the period between March 20, 2020 and Midvale's removal. Because such relief would yield a monetary benefit exceeding the amount-in-controversy threshold, that aspect of 28 U.S.C. § 1332 is satisfied.

Second, Redenburg faults Midvale for basing its tabulation of the amount in controversy on Redenburg's May 19, 2020 letter response to Midvale's claim representative, which consisted of answers to questions relating to the claim. Because Redenburg did not attach that letter to its Complaint, Redenburg argues, it cannot be considered in determining the amount in controversy. That is wrong. In determining subject-matter jurisdiction, "courts are permitted to look to materials outside the pleadings. Such materials can include documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." *Romano*, 609 F.3d at 520 (citation omitted); *see Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010) ("[I]f the pleadings are inconclusive, then the courts may look to documents outside the pleadings to other evidence in the record to determine the amount in controversy.");

9

*Arseneault*, 2002 WL 472256, at \*6 (The Second Circuit . . . has said that, on jurisdictional issues, federal courts may look outside [the] pleadings to other evidence in the record" and therefore the court will consider "material outside of the pleadings" submitted on a motion to remand. (citation and quotation omitted)). Here, Midvale appended Redenburg's letter to the notice of removal because Redenburg's responses bore on the factual basis for removal. And Redenburg does not dispute that the letter is authentic. The Court finds the letter both relevant and reliable evidence with respect to the amount in controversy.

Third, Redenburg argues that the amount in controversy as tabulated by Midvale is impermissibly speculative because Midvale describes the more than $124,000 it contended was at issue as of the date of removal as an "estimat[e]." Remand Reply at 4 (quoting Remand Opp'n at 6–7). But Midvale's tally comes from *Redenburg*—which estimated its weekly average loss in its letter in support of its claim. *See* Redenburg Letter at 3–4; Remand Opp'n at 6 ("[B]ased on Plaintiff's estimate, the value of this litigation was over $124,000 at the time of removal."). To that weekly figure, Midvale merely did the quotidian operation of multiplying Redenburg's weekly estimate by the number of weeks between the date when (according to Redenburg) its claim began to accrue and the date of removal. That defendant's tabulation of the recovery Redenburg seeks is an estimate, not a precise figure, also does not matter, because it far exceeds the statutory threshold. "[A] defendant need not prove the amount in controversy to an absolute certainty." *Barett v. TP Trucking Co.*, No. 20 Civ. 2937 (PMH), 2020 WL 1862362, at \*1 (S.D.N.Y. Apr. 14, 2020) (quotations omitted). Midvale bears only the "burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quotation omitted). Midvale has done so here.

Accordingly, there being complete diversity and an amount in controversy exceeding $75,000, the Court has subject-matter jurisdiction and denies Redenburg's motion to remand.

### C. Attorney Fees

In his remand motion, Redenburg, finally, seeks an award of fees and costs associated with Midvale's removal and his remand motion. Remand Reply at 5; *see* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). Because the Court has denied Redenburg's remand motion, it denies his request for fees and costs. *See Musiello v. CBS Corp.*, No. 20 Civ. 2569 (PAE), 2020 WL 3034793, at *3 (S.D.N.Y. June 5, 2020) (denying plaintiff's motion to remand and request for attorney's fees).

## III. Midvale's Motion to Dismiss

Redenburg claims to have suffered business losses as a result of New York State's stay-at-home orders issued in response to the pandemic, which, it claims, have prevented clients from visiting the firm's offices and thus cost it business. Compl. ¶¶ 41–42. In moving to dismiss, Midvale argues that, as a matter of law, Redenburg is not entitled to relief because such losses are not covered by any of the Policy provisions on which Redenburg relies. Midvale is correct.

The legal principles governing Midvale's motion, which turns on the meaning of terms within the Policy, a form of contract, are familiar. To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145.

"The initial interpretation of a contract is a matter of law for the court to decide." *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (alteration omitted) (internal quotation marks and citation omitted). Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (internal quotation marks and citations omitted). "Where the provisions of a policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement." *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6 (1st Dep't 2002) (alteration omitted) (internal quotation marks and citation omitted); *see also Essex Ins. Co. v. Laruccia Constr., Inc.*, 71 A.D.3d 818, 819 (2d Dep't 2010) (under New York law, courts must give "unambiguous provisions of an insurance contract . . . their plain and ordinary meaning" (quotations omitted)). "It is well settled that [a] contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion." *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007) (citation and quotation marks omitted).

As to the burden of proof, it is "well-established . . . that a policyholder bears the initial burden of showing that the insurance contract covers the loss." *Roundabout Theatre Co.*, 751 N.Y.S.2d at 7. If, however, the policyholder carries this burden, the "insurer bears the burden of proof" to demonstrate "that an exclusion in the policy applies to an otherwise covered loss." *Morgan Stanley Grp.*, 225 F.3d at 276 n.1; *see also Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 327–28 (S.D.N.Y. 2005).

Here, Midvale argues that, on multiple grounds, Redenburg's claimed losses fall outside the Policy's reach. To resolve this claim, the Court need rely on only one: that Redenburg's losses fall within the Policy's explicit virus exclusion. Redenburg invokes four sections of the Policy: those relating to "Business Income," "Extra Expense," "Extended Business Income," and "Civil Authority." Compl. ¶ 41. Critically, each of the four sections extends coverage only to a "Covered Cause of Loss." A Covered Cause of Loss is defined as "[r]isks of direct physical loss unless the loss is [e]xcluded in Paragraph B . . .," which is entitled "Property: Exclusions." And subsection (1)(j) within Paragraph B, entitled "Virus or Bacteria," excludes from a Covered Cause of Loss any "loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or diseases." Policy at MIC16, 29, 31. It adds that "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id*.

Redenburg's claimed loss falls squarely within the Policy's virus exclusion. Redenburg resists this conclusion, on the grounds that the firm's loss most immediately results not from the COVID-19 virus, but from New York's State's stay-at-home and social-distancing orders. But that formulation does not salvage his claims under the Policy. As Redenburg's Complaint itself repeatedly recognizes, these emergency orders were prompted *by the virus*. *See, e.g.*, Compl. ¶ 25 ("[T]he efficient proximate cause of Plaintiff's losses, were precautionary measures taken by the State of New York to prevent the spread of COVID-19 in the future[.]"); *id*. ¶ 34 ("On March 20, 2020, the State of New York issued a stay-at-home order that all non-essential workers must stay home as a result of the COVID-19 pandemic."); *id.* ¶ 45 ("The COVID-19 pandemic is physically impacting public and private property, and physical spaces and cities around the world. . . . Any effort by the Defendant, MIDVALE, to deny the reality that the

pandemic causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation[.]"); *id*. ¶ 46 ("A declaratory judgment determining that the insured Plaintiff is entitled to business loss coverage under the policy is necessary to prevent Plaintiff from being left without bargained-for insurance coverage required to ensure the survival of his law firm due to the Civil Authorities' response to the COVID-19 pandemic."). And the virus exclusion, by its terms, applies to loss or damage "directly *or indirectly*" caused by a virus.

That the state's stay-at-home orders were, in the sequence of causation, one step more proximate to Redenburg's losses than the virus thus does not bring Redenburg's claims outside the exclusion. The Policy's language that damage caused "directly or indirectly" by "[a]ny virus" "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" forcefully reinforces the point. *See Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. v. Trumbull Ins. Co.*, 2016 N.Y. Slip Op. 32736, at *29–32 (Sup. Ct. Apr. 5, 2016) (where policyholder sought coverage under civil-authority provision based on evacuation order, finding exclusion for flooding to apply because the order was prompted by the potential for flooding).

Plain language thus excludes recovery under all four Policy sections on which Redenburg relies. *See Parks Real Estate Purchasing Grp.*, 472 F.3d at 42 (under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract"); *N.Y. Univ. v. Factory Mut. Ins. Co.*, 2018 WL 1737745, at *10 (S.D.N.Y. Mar. 27, 2018) ("An insurer is entitled to have its contract of insurance enforced in accordance with its provisions and without a construction contrary to its express terms." (quoting *Bretton v. Mut. Of Omaha Ins. Co.*, 110 A.D.2d 46, 49 (1st Dep't 1985), *aff'd*, 66 N.Y.2d 1020 (1985))); *Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 89 N.Y.2d 308, 316 (1996) ("Construing the terms of these exclusions as required, by giving the words their plain

meaning, it is evident that coverage is unavailable[.]"). This holding aligns with those of other courts around the nation that, in recent months, have held insurance claims for business income excluded under similarly worded virus-related exclusions. *See, e.g.*, *LJ New Haven LLC v. AmGUARD Ins. Co.*, No. 20 Civ. 00751 (MPS), 2020 WL 7495622, at *1 (D. Conn. Dec. 21, 2020) (dismissing claim for coverage under "business interruption" policy based on state executive orders closing indoor dining in restaurants because the "policy's virus exclusion forecloses coverage for Plaintiff's losses"); *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, No. 20 Civ. 4466, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020) (dismissing claim because, even assuming plaintiff's "claim for loss of business income due to the shelter-in-place orders would otherwise be covered by [plaintiff's] insurance policy, the claim clearly falls within the [policy's] virus exclusion"); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. 20 Civ. 3198, 2020 WL 6545893, at *1 (E.D. Pa. Nov. 6, 2020) (same).[5]

Because Redenburg's claim for declaratory relief is foreclosed by the plain terms of the virus exclusion, the Court does not have occasion to reach Midvale's two alternative arguments for dismissal under Rule 12(b)(6). The first—which applies to Redenburg's claims under the "business income," "extra expense," and "extended business income" sections of the Policy—is that the loss of client revenue that his firm experienced does not qualify as due to a "direct physical loss or damage" to a premises, as each of these sections requires. *See* Policy at MIC20–21;

---

[5] Redenburg's Complaint appears to differentiate between a virus and a pandemic, suggesting that only losses caused by the former are excluded. *See* Compl. ¶ 17. To the extent Redenburg means to pursue that argument, it is meritless. As Midvale notes, the COVID-19 pandemic is simply a large-scale outbreak of a virus. *See Pandemic*, Merriam-Webster, https://www.merriam.webster.com/dictionary/pandemic (last accessed Jan. 1, 2021) (defining "pandemic" as "an outbreak of a disease that occurs over a wide geographic area and affects an exceptionally high proportion of the population"). And the Policy's virus exclusion applies "whether or not [the virus] results in widespread damage or affects a substantial area." Policy at MIC209.

*see also 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20 Civ. 4471 (LGS), 2020 WL 7360252, *1 (S.D.N.Y. Dec. 15, 2020) (dismissing claim by plaintiff for coverage for business losses due to "direct physical loss of or physical damage to property" resulting "from government restrictions on non-essential businesses during the COVID-19 pandemic"); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 Civ. 4612 (JPC), 2020 WL 7321405, at *8 (S.D.N.Y. Dec. 11, 2020) (noting that, "[a]s a result of COVID-19 closure orders throughout the country, many businesses have brought lawsuits claiming entitlement to coverage under provisions materially similar to those at issue . . . here," but that "nearly every court to address this issue has concluded that loss of use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property," and therefore dismissing the claim before it); *id.*(citing 14 similar decisions cases across the country); *cf. Newman Myers*, 17 F. Supp. 3d at 331 (denying policyholder's coverage claim for lost income due to inability to access office following Hurricane Sandy, because Policy's "direct physical loss or damage" requirement "unambiguously[] requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage"). The second—which applies to Redenburg's claims under the Civil Authority section—is that Redenburg's loss did not entail any of three elements required under that section: (1) damage to another's "property" within one mile of the insured's office; (2) a civil-authority action in response to "dangerous physical conditions" caused by such damage; and (3) that the civil authority's action "prohibited access" to plaintiff's office. *See* Policy at MIC21–22. In the event that the Court's holding that the virus exclusion precludes relief were overturned, the Court, on remand, would take up those arguments, which also appear substantial.

## CONCLUSION

For the foregoing reasons, the Court denies Redenburg's motion to remand and grants Midvale's motion to dismiss. The Clerk of Court is respectfully directed to terminate the motions pending at dockets 9 and 11, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: January 27, 2021
      New York, New York